**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| )<br>) | |
| In the Matter of the   )<br>Extradition of   )<br>MARIO JUAREZ SALDANA   )<br>)<br>) | Misc. No. <u>09-MJ-00014-P</u> |

**AMENDED ORDER DENYING DEFENDANT'S MOTION FOR RELEASE ON**
**BAIL PENDING EXTRADITION PROCEEDINGS**

Before the court is defendant Mario Juarez Saldana's Motion for Release on Bail Pending Extradition Proceedings. (D.E. 12 & 13). The court held a hearing on the motion on June 30, 2009. For the reasons below, the motion is DENIED.

### I.  BACKGROUND FACTS

On May 21, 2009, Mario Juarez Saldana was taken into federal custody in Memphis, Tennessee, on charges relating to a 1997 homicide committed in Guanajuato, Mexico. On May 23, 1997, the Judge of First Instance of the Judicial District of Valle de Santiago issued a warrant for the arrest of Saldana in case number 82/997. United States Magistrate Judge Gerald B. Cohn issued a provisional arrest warrant for Saldana on February 18, 2009. Saldana has remained in custody since May 21, and now seeks release on bail pending further extradition proceedings.

Saldana grew up in a village in Guanajuato, Mexico, and several of his family members still live there presently. Saldana has lived in the United States since 1985, and has had legal permanent residency status since 1990. He travels to Mexico to visit his family members in Guanajuato regularly.[1] During his visits to Mexico, Saldana claims that the Mexican authorities have never attempted to arrest him or approach him about the homicide case.

In the United States, Saldana lives with his life partner, Maria Del Carmen Barrone, and the couple's nine-year-old son, who is a United States citizen. He has stable employment at the Lehman-Roberts Company and the Memphis Stone & Gravel Company. He owns his own home, and he and his family regularly attend services at Sacred Heart Catholic Church.

## II.  LEGAL STANDARD

The federal statute governing extradition procedures in the United States, 18 U.S.C. § 3181, et seq., provides that

> Whenever there is a treaty or convention for extradition between the United States and any foreign government, . . . any justice or judge of the United States, or any magistrate judge authorized to do so by a court of the United States . . . may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the

---

[1]

Saldana and Barrone claim that Saldana visits Mexico approximately once a year. However, he has only produced documentation confirming five visits since 1997.

crimes provided for by such treaty or convention, . . .
issue his warrant for the apprehension of the person so
charged, that he may be brought before such justice,
judge, or magistrate judge, to the end that the
evidence of criminality may be considered.

. . . .

If, on such a hearing, he deems the evidence sufficient
to sustain the charge under the provisions of the
proper treaty convention, . . . he shall certify the
same, together with a copy of the testimony taken
before him, to the Secretary of State, that a warrant
may issue upon the requisition of the proper
authorities of such foreign government, for the
surrender of such person, according to the stipulations
of the treaty or convention; and he shall issue his
warrant for the commitment of the person so charged to
the proper jail, there to remain until such surrender
shall be made.

18 U.S.C. § 3184. The United States and Mexico have an
extradition treaty which went into effect on January 25, 1980.
Extradition Treaty Between the United States of America and the
United Mexican States, U.S.-Mex., May 4, 1978, 31 U.S.T. 5059
(hereinafter "Extradition Treaty"). Article 2 of the Extradition
Treaty provides for the extradition of persons accused or
convicted of certain crimes, including murder and manslaughter.
Id., Art. 2. Article 11 of the treaty provides for the
provisional arrest of an accused person pending a formal
extradition request. Id., Art. 11. In the present case, Saldana
has been provisionally arrested pursuant to the terms of Article
11, and a formal extradition request is expected from Mexico.
Release on bail is not provided for or addressed in either the

federal extradition statute or the Extradition Treaty between the
United States and Mexico.

An extradition proceeding is not a criminal case. <u>See
Martin v. Warden, Atlanta Pen.</u>, 993 F.2d 824, 829 (11th cir.
1993); <u>Kamrin v. United States</u>, 725 F.2d 1225, 1227-28 (9th Cir.
1984). Therefore, the Bail Reform Act, 18 U.S.C. §§ 3141, et
seq., and its criteria governing bail in criminal cases do not
apply in extradition matters. <u>In re Molnar</u>, 182 F. Supp. 2d 684,
687 (N.D. Ill. 2002) (citing <u>Kamrin</u>, 725 F.2d at 1227-28).
Similarly, neither the Federal Rules of Criminal Procedure nor
the Federal Rules of Evidence apply to international extradition
proceedings. Fed. R. Crim. P. 1(a)(5)(A); Fed. R. Evid.
1101(d)(3).

There is a presumption against bail in international
extradition cases. <u>Wright v. Henkel</u>, 190 U.S. 40 (1903); <u>see
also In re Santos</u>, 473 F. Supp. 2d 1030, 1035 (C.D. Cal. 2006);<u>In
re Maniero</u>, 950 F. Supp. 290, 294 (S.D. Cal. 1996). In <u>Wright v.
Henkel</u>, the Supreme Court expressed its reluctance to grant bail
to international fugitives pending extradition, stating that
"bail should not ordinarily be granted in cases of foreign
extradition." <u>Wright</u>, 190 U.S. at 63. However, the <u>Wright</u> Court
opined that bail may be granted in an extradition matter when
"special circumstances" are present. <u>Id.</u>; <u>see also Martin</u>, 993
F.2d at 827; <u>Koskotas v. Roche</u>, 931 F.2d 169, 175 (1st Cir.

-4-

1991); <u>Salerno v. United States</u>, 878 F.2d 317, 318 (9th Cir. 1989); <u>In re Russell</u>, 805 F.2d 1215, 1217 (5th Cir. 1986).  The defendant facing extradition bears the burden of establishing special circumstances sufficient for pre-extradition release on bail.  <u>Salerno</u>, 878 F.2d at 317-18; <u>United States v. Leitner</u>, 784 F.2d 159, 160 (2d Cir. 1986); <u>United States v. Taitz</u>, 130 F.R.D. 442, 444 (S.D. Cal. 1990).

There is no judicially established definition of what constitutes "special circumstances." <u>Molnar</u>, 182 F. Supp. 2d at 688; <u>Maniero</u>, 950 F. Supp. at 294.  Rather, courts have determined the presence or absence of special circumstances on a case-by-case basis.  <u>Molnar</u>, 182 F. Supp. 2d at 688; <u>Maniero</u>, 950 F. Supp. at 294.  "[T]he determination of what constitutes a special circumstance is left to the sound discretion of the trial judge." <u>In re Gonzales</u>, 52 F. Supp. 2d 725, 736 (W.D. La. 1999); <u>see also</u> <u>Maniero</u>, 950 F. Supp. at 294.  Furthermore, any "list of potential 'special circumstances' is not limited to those previously recognized in published decisions." <u>Santos</u>, 473 F. Supp. 2d at 1036.  Some courts have taken into consideration the defendant's status as a detainee pursuant to a provisional arrest warrant in deciding whether "special circumstances" exist. <u>Leitner</u>, 784 F.2d at 160; <u>Molnar</u>, 182 F. Supp. 2d at 687-88; <u>United States v. Messina</u>, 566 F. Supp. 740, 742 (D.C.N.Y. 1983).

### III.  ANALYSIS

As an initial matter, Saldana asserts that he poses a low risk of flight from the United States.  He has a family in the Memphis area, owns a home, and has steady employment.  According to Saldana, he has been a law-abiding citizen in the twenty-four years that he has resided in the United States, and he has never attempted to flee in the twelve years since the time of the alleged homicide.

Courts have consistently held that the absence of flight risk is not itself a special circumstance, but rather a separate threshold determination for the court to make in deciding whether to grant bail in extradition cases.  Russell, 805 F.2d at 1217; Hu Yau-Leung v. Soscia, 649 F.2d 914 (2d Cir. 1981); United States v. Williams, 611 F.2d 914, 915 (1st Cir. 1979); Santos, 473 F. Supp. 2d at 1035; Molnar, 182 F. Supp. 2d at 687.  In other words, the defendant must demonstrate the absence of risk of flight in addition to establishing the existence of a special circumstance.  Santos, 473 F. Supp. 2d at 1035; Molnar, 182 F. Supp. 2d at 687.

Even assuming, *arguendo*, that Saldana poses a low risk of flight, the court nevertheless finds that Saldana has not demonstrated special circumstances that would justify releasing him on bail at this time.  Saldana argues that his continued detention is causing his family substantial financial and emotional hardship, and that such hardship constitutes a special

circumstance that weighs in favor of his release on bail.  While
Saldana may be the primary wage-earner for his family, the court
finds that the financial and emotional hardship to his family is
no different from the hardship experienced by the family of other
defendants who are detained, and certainly does not rise to the
level of a special circumstance.  "Special circumstances must be
extraordinary and not factors applicable to all defendants facing
extradition."  <u>Gonzales</u>, 52 F. Supp. 2d at 735 (citing <u>In re
Smyth</u>, 976 F.2d 1535, 1535-36 (9th Cir. 1992)); <u>see also</u> <u>In re
Nacif-Borge</u>, 829 F. Supp. 1210, 1216 (D. Nev. 1993).  Financial
and emotional hardship is present in almost all cases in which a
family member is detained, and thus such hardship cannot be
considered extraordinary, nor can it comprise a special
circumstance.  <u>Russell</u>, 805 F.2d at 1217; <u>Molnar</u>, 182 F. Supp. 2d
at 688.

     Saldana also argues that his character and background
indicate that he does not pose a danger to the community and
that, in addition to demonstrating that he is a low flight risk,
his character and background contribute to a finding of special
circumstances.  Specifically, Barrone testified that Saldana is a
devoted father and his employer provided a letter stating that
Saldana is a valued employee.  The court finds that this evidence
of Saldana's character and background does not constitute a
special circumstance warranting bail.  A defendant's character

and background are typically not considered special circumstances on their own, but are "[m]ore often . . . considered in regard to risk of flight and danger to the community, rather than as a special circumstance." Nacif-Borge, 829 F. Supp. at 1220. In Nacif-Borge, the defendant demonstrated his good character and background through his close family relationships, lack of a criminal record, and through letters from eighty-five friends and associates, all of whom vouched for his upstanding character. Id. Still, the court in that case declined to find that the defendant's good character and background rose to the level of a special circumstance. Id.; cf. Hu Yau-Leung, 649 F.2d at 920 (mentioning consideration of "age and background" without listing any specific elements of the defendant's background that were considered; also basing the decision to grant release on bail on the "lack of any suitable facility in which Hu could be held"); Taitz, 130 F.R.D. at 446 (briefly mentioning defendant's lack of criminal background without elaboration, considering four other special circumstances in great detail, including the potential for lengthy incarceration, the defendant's health problems, the defendant's inability to practice his religion while incarcerated, and the absence of a diplomatic rationale for denying bail).

Saldana further contends that release on bail is appropriate because he intends to vigorously challenge his extradition, and

-8-

thus, there is a high probability that his extradition proceedings will last for several months.  While lengthy delays in the extradition process can sometimes serve as a special circumstance for the purpose of granting bail, the mere anticipation of delay in extradition proceedings is generally insufficient to support a finding of special circumstances.  See In re Morales, 906 F. Supp. 1368, 1375 (S.D. Cal. 1995) (denying bail based on the anticipation that the government would be unprepared for the extradition hearing, stating that the proper time to seek bail was at the hearing if the government was indeed not prepared to go forward); In re Sutton, 898 F. Supp. 691, 695 (E.D. Mo. 1995) (finding that, where defendant raised a constitutional challenge to the federal extradition statute and anticipated that the challenge would cause an unusual delay in the extradition proceeding, the court could not grant bail until such delay materialized).  In Nacif-Borge, as in the present case, the defendant had been placed under provisional arrest pending a formal extradition request from the Mexican government.  Nacif-Borge, 829 F. Supp. at 1216.  The Nacif-Borge court declined to grant bail based on the potential of a lengthy delay, stating

> Article 11 of the extradition treaty between the United
> States and Mexico allows sixty days after the
> provisional arrest for Mexico to lodge the formal
> extradition request with the U.S. Department of State.
> That period has not expired yet.  Therefore a finding

of unusual delay at the stage of the proceedings would be premature.

Id.  As was the case in Nacif-Borge, it would be premature for this court to release Saldana on bail based on anticipated delays in his extradition proceedings.[2]

### IV.   CONCLUSION

The court has considered each of Saldana's arguments in favor of release on bail, and finds that these arguments, viewed both individually and collectively, do not demonstrate that there are special circumstances that warrant his release on bail at this time.  Accordingly, Saldana's Motion For Release on Bail is DENIED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

July 9, 2009
Date

---

[2]

Saldana also appears to challenge the circumstances surrounding the issuance of the provisional arrest warrant as grounds for his release on bail, citing the Molnar case.  Molnar, 182 F. Supp. 2d at 688.  Even if this court were inclined to apply the more liberal standards for bail expressed in Molnar, the court finds that the purported special circumstances raised by Saldana do not meet this standard.